# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **Randy Lee Lassiter, Jr.,** )<br>    **Plaintiff,** )<br> )<br>v.                                                           )<br> )<br>**Sergeant T. Davis, et al.,** )<br>    **Defendants.** ) | 1:19cv889 (LO/TCB) |

## MEMORANDUM OPINION & ORDER

Defendants, Officer Keisha Govia and Sergeant Ernest Kelly, move for summary judgment in this civil action claiming that the officers acted with deliberate indifference to plaintiff Randy Lassiter's serious medical needs while he was confined pretrial at Rappahannock Regional Jail (RRJ). See 42 U.S.C. § 1983; [Dkt. No. 24]. Lassiter, who is proceeding pro se, has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 24], and he opposes defendants' motion [Dkt. No. 32].[1] Because the undisputed facts demonstrate that the defendants did not interfere with Lassiter's nutritional needs, as alleged, defendants' motion will be granted.

## I. Background

The operative complaint claims that Officer Govia and Sergeant Kelly acted with deliberate indifference to Lassiter's serious medical need when, from April 23, 2019, through May 7, 2019, they denied him doctor-prescribed Ensure drinks while his jaw was wired shut after surgery to mend his broken jaw. [Dkt. No. 9, Second Amended Compl.]. In particular,

---

[1] Lassiter also moves for default judgment against Dr. Moreno. [Dkt. No. 44]. The claims against Dr. Moreno have already been dismissed without prejudice under Federal Rule of Civil Procedure 4(m). [Dkt. No. 40]. The motion therefore will be denied as moot.

Lassiter alleges that Officer Govia "den[ied] me my ensures prescribed by the jail and outside doctors," and that, when he reported this to Sergeant Kelly, he replied, "I wasn't getting my Ensure." [Dkt. No. 9].

In support of the motion for summary judgment, defendants put forth evidence, including affidavits and medical records, to dispute Lassiter's allegation that Officer Govia and Sergeant Kelly interfered with him getting doctor-prescribed Ensure supplements. The undisputed medical evidence establishes the following. A medical progress note from April 24, 2019—the day after Lassiter arrived at RRJ—sets forth his treatment plan, which includes a "[f]ull liquid diet with health shakes and ensure." [Dkt. No. 25, Ex. 3, at pp. 4, 8]. An RRJ physician did not enter an order for Ensure, however, until April 30. [Id., at p. 1]. Specifically, Dr. Moreno placed an order for Lassiter to receive Ensure drinks twice daily, once in the morning and once in the evening, for a 14-day period beginning April 30, 2019. [Id.]. The health services administrator at RRJ attests that "the nutritional supplement Ensure must be ordered by a healthcare provider." [Dkt. No. 25, Ex. 4, Westbrook Aff. ¶ 4]. And a medical progress note dated May 6, 2019, states that Lassiter "reports he is getting Ensure 2 times daily." [Dkt. No. 25, Ex. 3, at p. 6].

Defendants have provided additional evidence to show that Lassiter had received Ensure once Dr. Moreno prescribed it. For example, in an inmate complaint Lassiter submitted, dated May 2, 2019, he reports that he "just received my Ensure 8 days after I informed Internal Faires [sic] about the situation." [Id., Ex. 5, at p. 1]. Additionally, by sworn affidavit Officer Govia denies directing a nurse to withhold Ensure from Lassiter, and she further avers that she does not recall having any conversations with nurses about Lassiter's entitlement to Ensure. [Id., Ex. 1, Govia Aff. ¶¶ 8–9]. Further, Sergeant Kelly attests by affidavit that, sometime between April 23, 2019, and April 30, 2019, Lassiter "was upset that he was not receiving Ensure and informed me

that Dr. Moreno had ordered it for him." [Id., Ex. 2, Kelly Aff. ¶ 8]. After checking Lassiter's records, Kelly adds, he told Lassiter that there was no medical order for Ensure, only for "health shakes with his meals, a different form of liquid nutrition, which he was receiving." [Id. ¶ 9].

Lassiter does not dispute defendants' evidence that the jail physician, Dr. Moreno, did not enter an order for Ensure until April 30, 2019 or that, by May 2, 2019—by Lassiter's own account—he had received Ensure. In fact, his brief opposing summary judgment focuses only on the period from April 23, 2019, through April 30, 2019. Specifically, he attests by affidavit that Officer Govia took Ensure out of the nurses hand "at some point during the period from April 23, 2019–April 30, 2019." [Dkt. No. 32, Ex. 1, Pl. Aff.]. The Court therefore concludes that the parties agree that Lassiter's claim for deliberate indifference is now limited to the period from April 23, 2019 through April 30, 2019. In support of the claim during that period, Lassiter has submitted as evidence the discharge instructions from Sentara Norfolk General Hospital, where he underwent jaw surgery before his transfer to RRJ. [Id., Pl. Ex. 3]. The hospital records, dated April 21, 2019, instruct Lassiter to ingest a liquid diet and to supplement meals with one Ensure bottle three times daily. [Id., Pl. Ex. 3 & Ex. 4].

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

### III. Analysis

Defendants argue that the undisputed facts demonstrate that they did not act with deliberate indifference to Lassiter's serious medical need for supplemental liquid nutrition in the specific form of Ensure. They contend that it is undisputed that Ensure must be ordered by a healthcare provider, and, once an RRJ physician placed that order, Lassiter received Ensure.

The due process clause of the Fourteenth Amendment, which protects pretrial detainees, "mandates the provision of medical care to detainees who require it." Hill v. Nicodemus, 979 F.2d 987, 990–91 (4th Cir. 1992). That mandate is violated when a prison official acts with deliberate indifference to an inmate's serious medical need. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); see also Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (observing that courts evaluate medical claims brought by inmates and pretrial detainees under same deliberate-indifference framework). To prevail on a deliberate indifference claim, a detainee must prove an objective and subjective component, specifically, that (1) the plaintiff has a serious medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (the objective component); and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them" (the subjective component). Gordon v. Schilling, 937 F.3d 348, 356–57 (4th Cir. 2019) (internal quotation marks, citations, and alterations omitted).

The undisputed evidence does not satisfy the subjective component for Lassiter's deliberate indifference claim, and, thus, the defendants are entitled to judgment as a matter of law. Lassiter no longer contends that the defendants interfered with him getting Ensure before April 30, 2017, when Dr. Moreno placed the order for it. Instead, he points to his hospital

discharge records dated April 21, 2019—before his admission to RRJ—that recommend Ensure. But even if (and that's a big if) those discharge patient instructions qualified as an "order[] by a healthcare provider" to allow the Ensure supplement to be given to Lassiter before Dr. Moreno ordered it, see [Dkt. No. 25, Def. Ex. 4, Westbrook Aff. ¶ 4], there is no evidence that the defendant officers had access to, or knew about, the hospital discharge records. And to prevail on a deliberate indifference claim, Lassiter must put forth evidence that "defendants *actually knew of* and *disregarded* a substantial risk of serious injury to the detainee or that they *actually knew of* and *ignored* a detainee's serious need for medical care." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (internal quotation marks and citation omitted). Lassiter has not put forth any evidence to meet that standard. Defendants therefore are entitled to summary judgment in their favor.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment [Dkt. No. 24] be and is GRANTED; and it is further

ORDERED that plaintiff's motion for default judgment [Dkt. No. 44] be and is DENIED; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the appellate court. Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of defendants, to send a copy of this Order to plaintiff and to counsel of record for defendants, and to close this civil action.

Entered this 8th day of June 2021.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge